FANKHAUSER, EXRX., APPELLANT, *v.* CITY OF MANSFIELD, APPELLEE.
LEJEUNE, APPELLANT, *v.* CITY OF MANSFIELD, APPELLEE.
DICKEY, APPELLANT, *v.* CITY OF MANSFIELD, APPELLEE.

(Nos. 68-543, 68-544 and 68-545—Decided July 9, 1969.)

104

*Messrs. Ryan & Cole, Mr. James L. Ruef, Messrs. Weldon, Huston & Keyser* and *Mr. Richard R. Fowler,* for appellants.

*Mr. Robert K. Rath,* city solicitor, for appellee.

Duncan, J. The nature and extent of the liability of municipal corporations in Ohio has been the subject of extensive comment, both by judges and text-writers. The judicially established rule, which is based upon the traditional doctrine of sovereign immunity, is that a municipality is not liable for damages resulting from the exercise of a governmental function. Damage caused in the exercise of a proprietary function is actionable. However, this distinction has not always been a part of Ohio law. See

*Commrs. of Brown County* v. *Butt* (1826), 2 Ohio 349; *Goodloe* v. *Cincinnati* (1831), 4 Ohio 500; *Rhodes* v. *Cleveland* (1840), 10 Ohio 160; *McCombs* v. *Akron* (1846), 15 Ohio 474; *Dayton* v. *Pease* (1854), 4 Ohio St. 80. Holding municipalities liable, without reference to the type function exercised, was to give way to the rule distinguishing governmental from proprietary functions. For a well-stated history of the legal metamorphosis of the rule, see *Broughton* v. *Cleveland,* 167 Ohio St. 29.

The experience our courts have had with the segregation of municipal activities into governmental and proprietary categories has been awkward. This legal morass is well discussed by Gibson, J., concurring in the judgment in *Hack* v. *Salem,* 174 Ohio St. 383, at pages 391 through 399. The reasons stated in that concurrence for the abolition of the governmental-proprietary distinction are appealing. However, the resolution of the instant cases does not require us to take up the governmental or proprietary gauntlet. For the purpose of our decision in the cases at bar, we assume that the maintenance of an overhead electric traffic signal is a governmental function, for which a municipal corporation cannot be held liable unless liability is authorized by statute.

As the governmental-proprietary distinction served to limit the tort liability of municipalities, Section 723.01, Revised Code, and its predecessors became the most popular vehicle used to bring liability to municipalities for injuries sustained due to defects in public streets. That section is as follows:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

Since 1852, the principle embodied in this section has been a part of our law (50 Ohio Laws 223, 244, Section

63). The statute creates liability for the maintenance by the municipality of a nuisance, rather than liability for negligence. See *Wall* v. *Cincinnati,* 150 Ohio St. 411. For a discussion of the kinds of nuisance see *Taylor* v. *Cincinnati,* 143 Ohio St. 427.

The briefs and argument of counsel cite *Wooster* v. *Arbenz,* 116 Ohio St. 281. We are of the opinion that that case is consistent with established case law. However, in the *Wooster case* the court decided that the activity of physically repairing the street in order to keep it open was a governmental rather than proprietary function. In his opinion, Chief Justice Marshall stated, at page 290:

"By the weight of authority, as well as upon principle, we have reached the conclusion that streets and highways are public and governmental institutions, that in the absence of statutes there would be no liability for failure to maintain them, that it is only by reason of statutes that municipalities have been held responsible in damages for injuries caused by defects in streets, and that this statutory liability by its terms extends only to damages caused by defects in the streets themselves, and does not extend to the negligence of the agents and servants of the city while in the act of making repairs and improvements."

By assuming the function of maintenance of traffic control signals to be governmental in the instant cases, we do not have the major problem that faced the court in the *Wooster case, supra.* Therefore, reference to *Wooster* does not aid this determination, except for the language set forth above, that "statutory liability * * * extends only to damages caused by defects in the streets themselves."

The sole question here is whether the facts pleaded in plaintiffs' petitions permit holding a municipality liable in the particular exercise of a governmental function.

In *Imfeld* v. *Hamilton,* 166 Ohio St. 11, plaintiff based his cause of action on the manner in which a traffic signal was operated, claiming that the street was not open and free from nuisance, as required by Section 723.01, Revised

Code. Here, a "T" intersection was involved. The signal device allowed vehicular traffic to proceed north at all times, and also allowed pedestrian traffic to cross the same street, from west to east, with a green signal in its favor, thereby placing pedestrians in a place of peril. The *per curiam* opinion relates that there was no allegation that the signal was not *functioning* in the manner in which it was designed. Based upon the authority of *Tolliver* v. *Newark,* 145 Ohio St. 517, this court, in *Imfeld,* decided that plaintiff's allegations did not support an action against the city. Since there were no allegations of malfunction in the *Imfeld case,* there is a difference between that case and the instant cases. However, this court's reliance therein on *Tolliver* forecloses a reasonable basis upon which we could distinguish the cases. In *Tolliver,* plaintiff sought recovery for injuries sustained in a collision where unauthorized stop signs were installed on the wrong street of the intersection. Paragraph five of the syllabus is as follows:

"The alleged failure of a municipality to *maintain* a traffic sign in such a manner as to apprise drivers of vehicles of their duty to stop at a street intersection will not support an action for an injury resulting from a collision between two automobiles at such intersection." (Emphasis supplied.)

Germane to the instant case, Judge Bell, in *Tolliver,* stated, at page 523:

"In construing Section 3714, General Code [Section 723.01, Revised Code], this court has confined liability to cases which involve the construction or maintenance of the street, or *physical obstructions or hindrances to traffic.* We are now asked to extend that well understood and almost universally accepted doctrine." (Emphasis supplied.)

In *Tolliver,* this court's real concern was with the question of a municipality's duty to provide traffic signs and with the duty to properly maintain them, once erected. Although other and different legal problems were discussed in *Tolliver,* we cannot ignore the discussion of a

problem—maintenance of a traffic sign—which is somewhat analogous to the problem presented here.

We believe that paragraph five of the syllabus of *Tolliver* is broad, and must be reconsidered since, in these cases, we are again asked to extend the liability of a municipality.

In *Yackee v. Napoleon,* 135 Ohio St. 344, the first paragraph of the syllabus is as follows:

"The duty of a municipal corporation under Section 3714, General Code, to keep its streets open, in repair and free from nuisance, extends to structures or conditions located not only upon but above the surface of such streets, where such structures or conditions interfere with, or make dangerous, travel thereon."

In that case, plaintiff's decedent was injured while a passenger riding on the top of a truck when the truck passed under a railroad viaduct which was built too low. Recovery against the municipality was upheld. We note that the viaduct had nothing to do with the surface of the roadway, yet the court held that it was within the municipality's statutory obligation to maintain streets free of nuisance.

This court recently decided that Section 723.01, Revised Code, requiring municipalities to keep streets and highways in repair and free from nuisance, embraces only those conditions *affecting the actual physical conditions existing in or on highways.* See *Gabris v. Blake,* 9 Ohio St. 2d 71.

Pursuant to Section 723.01, Revised Code, a municipality has the obligation to keep the streets and highways *free from nuisance.* In our opinion, a nonfunctioning overhead electric traffic signal on a municipal street affects the physical condition existing in or on highways, and may be determined to be a nuisance by a jury under proper instructions. As its object, *inter alia,* Section 723.01 places an obligation on a municipality to keep highways and streets open for the purposes for which they were designed and built, *i. e.,* to afford the public a safe means of travel.

Traffic control signals, in this day of swift travel by high powered vehicles, are as necessary to orderly travel in urban areas as the surface of the road itself. Perhaps, in the past, traffic signals were of less importance than now, but they are now as much a part of our streets and highways as median strips, safety islands, or guard rails. In view of the obvious degree of reliance now placed in traffic control devices by users of the streets, it is difficult to perceive a greater nuisance to orderly urban street travel than a nonfunctioning or malfunctioning traffic control device. To hold otherwise, on the basis that the device is physically not a part of the roadway, would defy logic and frustrate the manifest legislative intent to keep the streets and highways free from nuisance. To say that a nonoperative traffic signal at an intersection of city streets is not a nuisance, but that a chuck hole at the same intersection is a nuisance, would be an over-technical distinction.

In interpreting a statute somewhat similar to Section 723.01, Revised Code, the Supreme Court of Michigan ruled that the failure of a city to maintain a stop sign comes under the statute allowing a municipal corporation to be held liable for failure to maintain public highways and streets in reasonable repair. Judge Edwards, in *O'Hare* v. *Detroit*, 362 Mich. 19, 106 N. W. 2d 538, said, at page 23:

"It seems obvious to us that once a municipality has decided to exercise the discretion vested in it to declare one street a through street and erect a stop sign facing the subordinate street, the stop sign becomes an important part of the physical appurtenances of the street." See, also, *Wagshal* v. *District of Columbia* (D. C. C. A.), 216 A. 2d 172.

Accordingly, under the provisions of Section 723.01, Revised Code, the allegations in plaintiffs' petitions that the municipality, pursuant to lawful ordinance, installed and operated an electric overhead traffic control signal, which was not in proper working order in that it was not giving a signal for southbound traffic, but was giving

signals for east-west traffic, and that notice of the condition was given the municipality nine hours prior to the accident, all of which directly and proximately caused plaintiffs' injuries, state causes of action.

Abandonment of prior decisions is of grave concern to courts, but is highly preferable to hair-splitting distinctions based on narrow fact-patterns. Accordingly, paragraph five of the syllabus in *Tolliver* v. *Newark*, 145 Ohio St. 517, is overruled, and *Imfeld* v. *Hamilton*, 166 Ohio St. 11, is overruled.

The judgments of the Court of Appeals are reversed and the causes are remanded to the Court of Common Pleas for further proceedings.

*Judgments reversed.*

TAFT, C. J., MATTHIAS, O'NEILL and SCHNEIDER, JJ., concur.*

HERBERT, J., concurs in the judgments only and the syllabus, but dissents from the overruling of paragraph five of the syllabus of *Tolliver* v. *Newark*.

---

*This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.