**ESTATE of ODER, Appellant,**

v.

**WAHL et al.; City of Newark, Appellee.**

[Cite as *Estate of Oder v. Wahl* (1990), 67 Ohio App.3d 596.]

Court of Appeals of Ohio,
Licking County.

No. CA–3486.

Decided May 8, 1990.

*Peter J. Myer,* for appellant.

*Mike Radabaugh,* Law Director, for appellee.

MILLIGAN, Presiding Judge.

Construed most favorably to appellant's decedent, the tragic facts are:

Decedent, Diana Lynne Oder, was a passenger on a motorcycle driven southbound on Mt. Vernon Road (Route 18) by her brother at a high rate of speed in a residential Newark neighborhood. Paula D. Wahl, westbound on Charles Street, entered the Mt. Vernon Road turning in the same southerly direction as Oder. Oder swerved the motorcycle to the right of the Wahl

automobile, and decedent either fell from the motorcycle when it swerved or struck the Wahl vehicle with her left leg. She was propelled from the motorcycle, striking her head against a stop sign post and was pronounced dead at the scene.

Paula Wahl and James Oder (the driver of the motorcycle) were previously dismissed as parties.

The sole remaining defendant is the city of Newark.

In count three of the original complaint, appellant, Estate of Oder, alleges that "decedent fell from the motorcycle * * * and struck a sign maintained by the City of Newark * * *. Said sign was maintained at a distance less than the minimum prescribed by the manual on uniform traffic control devices published by the United States Department of Transportation." The estate alleges that the failure to maintain the sign "in a safe manner was a direct and proximate result [*sic* cause] of the death of the decedent."

In appellant's first amended complaint, appellant adds that the city was negligent "in the location, placement, and maintenance of the sign in question," again alleging that such negligence was a direct and proximate "result" of the death of the decedent.

Nine months after the original complaint, appellant filed a second amended complaint altering the allegation that the sign distance violated United States Department of Transportation standards and claimed that the sign was maintained "at a distance less than the minimum prescribed by the manual of uniform traffic control devices published by the Ohio Department of Transportation, as adopted by Newark City Ordinance." Appellant further alleges that the location, placement, and maintenance of the sign in question constituted a nuisance and that the city was negligent in failing to abate the nuisance.

Following hearing upon summary judgment, the Licking County Common Pleas Court ruled:

"Viewing the facts in a light most favorable to the plaintiff, the court finds that the City of Newark is immune from liability pursuant to Chapter 2744 of the Ohio Revised Code. * * *

"Final judgment."

Appellant assigns two errors:

"I. The trial court erred in granting summary judgment in favor of appellee deciding that there were no genuine issues of material fact in dispute.

"II. The trial court erred in granting summary judgment in favor of appellee by deciding that appellee [was] entitled to judgment as a matter of law because appellee [was] immune pursuant to Revised Code Chapter 2744."

## I

Because we conclude that the city of Newark is immune from liability as a matter of law, we necessarily conclude that there are no genuine issues of material fact in dispute.

The first assignment of error is overruled.

## II

In 1985, the Ohio Legislature, in obvious response to decisions of the Supreme Court,[1] adopted Senate Bill 297. The legislation begins with a categoric provision of nonliability (immunity):

"(A)(1) * * * Except as provided in division (B) of this section, a political subdivision is *not liable* in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision *in connection with a governmental or proprietary function.*"[2] (Emphasis added.) R.C. 2744.-02(A).

Specific exceptions to nonliability are then catalogued in R.C. 2744.02(B):

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

"* * *

"(2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

---

1. See, for example, R.C. 2744.01(C)(2)(l), which directly impacts the 1982 holding in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749; R.C. 2744.01(C)(2)(o), which directly impacts *O'Brien v. Egelhoff* (1984), 9 Ohio St.3d 209, 9 OBR 520, 459 N.E.2d 886.

   As relates to the case *sub judice*, it also seems clear that R.C. 2744.01(C)(1)(j) is a specific legislative response to *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787.

2. S.B. 297 also provided a laundry list of examples of what constitutes a governmental function. The "erection or nonerection of traffic signs" is a governmental function per R.C. 2744.01(C)(1)(j). So also is the "provision or nonprovision, planning or design, construction, or reconstruction of a public improvement * * *." R.C. 2744.01(C)(1)(l). A "function that the general assembly mandates a political subdivision to perform" is also a governmental function. R.C. 2744.01(C)(1)(v).

"(3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

The Act further identifies specific immunity (nonliability) defenses:

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."   R.C. 2744.03(A)(5).

The historic judicial and legislative machinations surrounding governmental immunity have been tediously recorded and require no replication here.[3]

Clearly, then, the municipality has a duty to keep its streets "open, in repair, and free from nuisance * * *."   R.C. 2744.02(B)(3).   The duty runs to one who is injured or killed.   *Ibidem.*

The question becomes: Notwithstanding the duty imposed by the legislature, do the specific provisions granting governmental immunity apply, under the facts and circumstances of this case, construed most favorably to the appellant?

Appellant's theory of nuisance is that the stop sign was positioned by the city of Newark contrary to the mandate of the Manual of Uniform Traffic Control Devices, adopted by Newark city ordinance.

There is no dispute that when the decedent was propelled from the motorcycle, she struck her head on the post of a stop sign located at the southwest corner of the intersection of Mt. Vernon Road (Route 13) and Charles Street. There *is a genuine dispute* as to the precise location of the stop sign post at the time of the accident.

Construed most favorably to appellant, the stop sign was located close to the arc of the curve at the intersection, on a narrow tree lawn between the sidewalk and Mt. Vernon Road.   It is the only grass space at the intersection inasmuch as a large church parking lot entrance proceeds away from the

---

**3.**   See, for example, *Kettering, ex rel. Moser, v. Kettering* (Jan. 29, 1988), Montgomery App. No. 10596, unreported, 1988 WL 10121, reversed (1988), 37 Ohio St.3d 233, 525 N.E.2d 490, an exhaustive study memorialized by Judge Brogan.

intersection a substantial distance from Mt. Vernon Rd. Exhibit 4 shows the stop sign, which was attached to a U-shaped pole adjacent to a round pole to which was affixed the street signs. Immediately after the accident, a stop sign was erected in the same hole as previously occupied by the destroyed stop sign. Thereafter, the street sign and stop sign were combined on a pole established some 9.5 inches from the outer arc of the curbing. There is no evidence as to the distance of the pole either at the time of the accident or as now located from the travelled portion of Mt. Vernon Road.

Reasonable minds could not conclude other than that the stop sign pole, at the time of the accident, was located off the right-of-way (either Mt. Vernon Road or Charles Street) and on the tree lawn.

Is this dispute of fact "material" within the meaning of Civ.R. 56(C)?

If the municipality is clothed with immunity, as found by the trial court, the dispute is not material, *i.e.*, it is irrelevant.

Appellant seeks to extrapolate a duty not rendered irrelevant by immunity from the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, prepared by the Department of Transportation, Bureau of Traffic, 1972 ("MUTCD"), and adopted by the city of Newark.

"Signs should have the maximum practical lateral clearance from the edge of the traveled way for the safety of motorists who may leave the roadway and strike the sign supports * * *. Otherwise, breakaway or yielding supports should be used.

"Normally all signs should be (a) not closer than 6 feet from the edge of a paved or usable shoulder or (b) a minimum of 12 feet from the edge of the roadway pavement, whichever is greater. In urban areas a lesser clearance may be used where necessary. A clearance of 2 feet from the curb face is desirable and 1 foot is permissible where sidewalk width is limited or where existing poles are close to the curb." Manual, Section 2E–5, Lateral Clearance.

"A Stop sign shall always be erected at the point where the vehicle is to stop or as near thereto as possible. * * *

"The height and lateral clearance of the signs shall be in accord with Sections 2E–4 and 2E–5." Manual, Section 2H–5, Location of Stop and Yield Sign.

"To clarify the meanings intended in this Manual by the use of these words, the following definitions apply:

"1. SHALL—A mandatory condition. Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is mandatory when an installation is made that these requirements be met.

"2. SHOULD—An advisory condition. Where the word 'should' is used, it is considered to be advisable usage, recommended but not mandatory.

"3. MAY—A permissive condition. No requirements for design or application is intended." Manual, Section 1–D, Meaning of Shall, Should, May.

It is clear from a reading of the MUTCD that the precise location of the stop sign pole is discretionary; that the "shall" of Section 2H–5 becomes a "should" because of the language of Section E–5, incorporated.

We conclude that the immunizing provisions of the 1985 Sovereign Immunity Act apply and narrow and limit the impact of R.C. 723.01 and 2744.02(B)(3).

We agree with appellee that the provisions of R.C. 2744.01(C)(2)(j) denominate the erection of traffic signs as a "governmental function" for which the municipality is immune, unless its judgment was exercised with "malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5). No such evidence was tendered here.

Our conclusion is consistent with the logic and rationale of *Kunzman v. Cuyahoga Falls* (Sept. 13, 1989), Summit App. No. 14055, unreported, 1989 WL 106573:

"This court holds that summary judgment was proper because the installation of traffic control devices is a governmental function which is discretionary pursuant to MUTCD, and therefore the city is immune from tort liability for damages allegedly resulting from the absence of such devices." *Id.* at 5.

Appellant claims favor of two post–1985 court of appeals decisions. In *Sanchez v. Clark Cty.* (1988), 44 Ohio App.3d 97, 541 N.E.2d 471, the court of appeals concluded that the county may be liable, pursuant to R.C. 2744.-02(B)(3), for permitting a stop sign located adjacent to a public road to become obscured by overhanging tree branches. There, plaintiff's decedent was killed when he entered the intersection in violation of the stop sign, there being testimonial assertion that the government had actual or constructive notice of foliage blocking the stop sign. (Curiously, the Clark County Court of Appeals never considered the impact of R.C. 2744.03, focusing rather on the impact of R.C. 723.01 and *Fankhauser v. Mansfield* [1969], 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789, pre–1985 case law.)

*Sanchez, supra,* is clearly distinguishable upon its facts. There the planning and execution of the decision to locate the traffic control device was not challenged. Challenge was to the manner in which the municipality executed its maintenance responsibilities.

In *Kettering, ex rel. Moser, supra,* resident-taxpayers sought injunctive relief against the municipality's failure to enforce time restrictions on use of municipal tennis courts which caused nuisance level noise to residents. The Montgomery County Court of Appeals acknowledged that the decisions to place the courts and erect or not erect sound barriers were protected discretionary acts. It found, however, that the "failure to enforce the regulation (as to time use) may be actionable if the result is the creation of a nuisance." *Id.* at 32.

More in concert with the factual posture of the case *sub judice* is *Kunzman v. Cuyahoga Falls* (Sept. 13, 1989), Summit App. No. 14055, unreported, 1989 WL 106573. There, plaintiff was walking southbound, against the traffic, on or adjacent to the highway. The claim of plaintiff who was struck by an automobile was that the city failed to erect appropriate and suitable shoulder markings, violating its duties under R.C. 723.01. There, as here, the provisions of the MUTCD were relied upon to establish duty and avoid immunity. The court sustained the summary judgment, relying, as we do, upon R.C. 2744.02(B)(3), 2744.01(C)(2)(j), and 2744.03(A)(1), there being no demonstration of malice, bad faith or wanton conduct.

Compare *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, holding that where traffic control device installation is discretionary, the municipality is immune from tort liability for damages resulting from their absence.

The second assignment of error is overruled.

The summary judgment of the Licking County Common Pleas Court is affirmed.

*Judgment affirmed.*

HOFFMAN and SMART, JJ., concur.