LESKOVAC, Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Leskovac v. Ohio Dept. of Transp.* (1990), 71 Ohio App.3d 22.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–559.

Decided Dec. 31, 1990.

24

*Pratt & Buchert* and *Gregory K. Pratt,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Velda K. Hofacker,* for appellee.

McCormac, Judge.

Plaintiff-appellant, David W. Leskovac, appeals the judgment of the Court of Claims of Ohio in favor of defendant-appellee, the Ohio Department of Transportation ("ODOT"), finding that ODOT was not negligent in its design, construction, and maintenance of certain portions of Ohio's Rural Appalachian Highway, specifically the intersection of State Routes 32 and 73. Appellant's nine assignments of error are as follows:

"I. The trial court erred to the prejudice of the appellant in failing to find that appellant was negligent in not making enhancements to the intersection control devices at this intersection prior to the October 5, 1986 accident herein.

"II. The trial court erred to the prejudice of the appellant by finding that the appellee's negligence was not one of the proximate causes of the accident.

"III. The trial court erred to the prejudice of the appellant in holding that the defendant-appellee complied with its statutory duty to conform to the requirements of its own manual, known as the Ohio Manual of Uniform Traffic Control Devices.

"IV. The trial court erred to the prejudice of the appellant in holding that defendant-appellee need only establish that it took some action after it received actual notice of defects in the roadway.

"V. The trial court erred to the prejudice of the appellant in holding, in light of the accident history and large number of complaints, that minimum conformance with the manual correctly identified ODOT's duty.

"VI. The trial court erred to the prejudice of the plaintiff in allowing certain evidence to be admitted.

"VII. The trial court erred to the prejudice of the appellant in finding that the hazard caused by appellee's actions and inactions were not legally sufficient to constitute a nuisance.

"VIII. The trial court erred to the prejudice of the appellant in failing to find appellee negligent in not turning on the overhead flashing beacon and lights for the illumination of the intersection within a reasonable time after appellee had already made the decision to install the equipment.

"IX. The trial court's decision in favor of defendant-appellee Ohio Department of Transportation is against the manifest weight of the evidence."

This case arose from an automobile accident which occurred at the intersection of State Routes 32 and 73 in Adams County, Ohio, on October 5, 1986. Appellant sustained personal injuries and property damage when Louis R. Shannon failed to stop at the stop sign located on S.R. 73, a two-lane highway, and collided with appellant's motorcycle as it proceeded westbound on S.R. 32, a four-lane highway, through the intersection. Appellant filed suit in the Court of Claims against ODOT, alleging that ODOT had negligently designed, constructed, and maintained the roadways surrounding the intersection of State Routes 32 and 73. Specifically, appellant argued at the Court of Claims that ODOT was negligent in the placement of the traffic control devices on S.R. 73, in its failure to timely activate the flashing beacon which had been recently installed over the stop sign on S.R. 32, and in its creation of and failure to remedy the alleged nuisance at the intersection. In a separate cause of action, which was subsequently settled, appellant sought damages from Shannon.

In order for appellant to prevail under a theory of negligence, he must demonstrate to the trial court by a preponderance of the evidence that appellee owed him a duty of care, that appellee breached that duty, and that appellant suffered damages as a proximate result thereof.

We begin with appellant's fifth assignment of error, in which he essentially argues that the trial court improperly defined the scope of ODOT's duty of care to maintain the safety of Ohio's highways. It is settled that

appellee has a statutory duty to maintain Ohio's roadways in a reasonably safe condition. See R.C. 5501.01; R.C. 5501.11; *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335, at 339, 3 O.O.3d 413, at 415, 361 N.E.2d 486, at 489. The scope of ODOT's duty to ensure the safety of state highways is more particularly defined by Ohio's Manual of Uniform Traffic Control Devices ("manual"), which mandates certain minimum safety measures. Furthermore, R.C. 4511.10 and 4511.11(D) specifically require that traffic control devices placed on Ohio's roadways conform with the manual's specifications.

Appellant argues that the intersection in question did not conform with the manual's specifications and that the trial court erred by limiting appellee's duty to those specifications. Appellee contends that the manual is intended to provide only basic guidelines for Ohio highway safety, and that ODOT's duty of care under particular circumstances is defined solely by engineering judgment.

In *Perkins v. Dept. of Transportation* (1989), 65 Ohio App.3d 487, 584 N.E.2d 794, we specifically determined the weight to be accorded the manual specifications in determining ODOT's duty to maintain safe highways. In *Perkins,* we found that not all portions of the manual are mandatory, thereby leaving some areas within the discretion and engineering judgment of ODOT. This is in accord with Section 1C of the manual, which states, in relevant part:

"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. *Except for sections of this Manual that mandate the installation of a traffic control device, it is the intent that the provisions of this Manual be standards for traffic control device installation, but not a requirement for installation.* Qualified engineers are needed to exercise the engineering judgment inherent in a selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement. * * *" (Emphasis added.)

Nevertheless, we also held, in *Perkins,* that where ODOT chooses to undertake a discretionary act it is required to follow the manual specifications.

In following the manual specifications, ODOT must pay close attention to the language employed within its particular provisions. Section 1D of the manual provides that, if the word "shall" is used, as opposed to the word "should," a mandatory duty has been established. The standard of care established by the mandatory provisions of the manual cannot be altered under particular circumstances by engineering judgment. Hence, in *Perkins,* we said that a deviation from the mandatory standards of the manual renders

ODOT negligent *per se* and liable in damages if proximate causation is established. Otherwise, ODOT retains a certain degree of discretion in adopting the recommendations of the manual. ODOT's liability for its failure to implement the discretionary recommendations is determined in accordance with the same rules of tort law applicable to suits between private parties. See *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143, 572 N.E.2d 208.

Appellant's fifth assignment of error is overruled.

■ Appellant also raises the issue of the proper standard of care to apply in his fourth assignment of error. In his fourth assignment of error, appellant essentially argues that the trial court applied the incorrect legal standard in determining whether the state took adequate measures to ensure safe travel on S.R. 73 since 1973. Specifically, appellant argues that the trial court allowed ODOT to escape liability on the basis that it took some action after learning of the road's allegedly hazardous condition, as opposed. to reasonable action as required by *Knickel, supra*, to provide a safe highway.

On the day of the accident, southbound S.R. 73 contained stop signs on the left and right sides of the road at its intersection with S.R. 32, a destination distance mileage marker located at two hundred sixty-four feet from the stop sign, two sets of dual stop ahead signs located at four hundred eighty feet and eleven hundred feet from the stop sign, and a junction sign at approximately eight hundred ninety feet from the stop sign. Furthermore, ODOT had mounted, but had not yet activated, an overhead flashing beacon on the stop sign on the right side of S.R. 73.

The trial court's decision recites the history of the numerous improvements made by ODOT to S.R. 73 since its opening in 1973, as well as the accident history at the S.R. 32 intersection. The dual stop ahead signs were installed in 1975 subsequent to two fatal automobile accidents which had occurred earlier that year. In 1976, ODOT installed the dual stop signs at the S.R. 32 intersection as well as a destination distance sign along the west side of S.R. 73. Finally, in 1986, shortly before this accident, ODOT installed the flashing beacon above the right stop sign at the intersection.

There is no language in the trial court's opinion which indicates that it applied an improper standard in determining whether ODOT was negligent in its maintenance and improvement of S.R. 73. The trial court did not interpret ODOT's duty in regard to highway safety after notification of the two fatal accidents as a duty to take "some action." Cf. *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, at 130, 551 N.E.2d 215, at 217. Rather, the trial court found pursuant to *Knickel, supra*, that all of the

improvements to S.R. 73 were reasonably within ODOT's discretion and in compliance with the manual.

Appellant's fourth assignment of error is overruled.

The scope of ODOT's duty of care to maintain reasonably safe highways having been clarified, we turn to appellant's first, third, eighth, and ninth assignments of error, in which he contends that the trial court erred in not finding from the manifest weight of the evidence that ODOT breached its duties of care because of its alleged improper design, construction, and maintenance of the intersection at State Routes 32 and 73. Initially, it must be recognized that, when a judgment of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, it will not be disturbed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

In his first and eighth assignments of error, appellant contends that ODOT unreasonably maintained S.R. 73 in an unsafe condition since its opening in 1973 until October 8, 1986, because it negligently failed to illuminate the right-hand stop sign and to install rumble strips, despite notice of the roadway's allegedly hazardous condition. Appellant contends that it was unreasonable for ODOT to take any action in an effort to improve highway safety at the intersection short of illuminating the flashing beacon and installing rumble strips because of the allegedly high number of accidents which continued to occur at the intersection since the highway's opening in 1973.

Essentially what appellant contends under his first and eighth assignments of error is that ODOT had notice that the intersection at State Routes 32 and 73 was unreasonably unsafe from the accident history, as well as from citizen complaints which expressed concern about the safety of the Appalachian Highway and from the passage of Senate Bill No. 154. Appellant further contends that the improvements made since 1973 were unreasonable and insufficient for ODOT to escape liability.

The installation of flashing beacons and rumble strips is discretionary and not required by the manual. The manual specifically recommends that traffic control signals such as beacons should not be installed unless one or more of the signal warrants listed in Section 6C–2 are met, or a traffic engineering study otherwise warrants their installation. Although accident history is one of the factors which may cause a signal to be warranted, the requirements of the accident experience warrant listed in Section 6C–8 were not proven by the evidence in this case. The evidence showed that the continuous improvements made on S.R. 73 since its opening resulted in a reduction of the number of

accidents at the intersection from a high of four in 1976 to an overall total of four from 1977 through 1985. Hence, from the totality of the evidence, the trial court could reasonably conclude that ODOT's engineers acted reasonably and that they did weigh, as recommended by Section 6C–1 of the manual, the utility of a flashing beacon as opposed to a less restrictive sign or marking and the risk of the inclusion of a flashing beacon on the stop sign. The judgment of the trial court that ODOT was not negligent in initially opting for less restrictive warning signals at the intersection is thus supported by competent, credible evidence and will not be disturbed by this court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co., supra.*

Furthermore, once the decision was made to install the flashing beacon, ODOT did not breach its duty of care by waiting until October 8, 1986 to activate it. The decision was made to install the beacon in June 1985. After finalization of construction plans, advertisement, and the award of bids, it was not unreasonable that the beacon was not activated immediately. There was no testimony other than the fact that the beacon was completed by October 5, 1985, that energizing the beacon was unreasonably delayed. Even if ODOT should have activated the beacon by October 5, 1985, appellee failed to prove that ODOT's failure to do so was a cause in fact, or a proximate cause, of his accident. Thus, appellant failed to establish a prima facie case in negligence against ODOT for failure to timely activate the flashing beacon over the stop sign.

Appellant's first and eighth assignments of error are overruled.

In his third assignment of error, appellant argues that the trial court erred in holding that ODOT complied with the manual provisions regarding the installation of stop ahead and destination distance signs. Appellant's reliance on Section 7B–5 of the manual is misplaced because that section applies only to the erection of signs required for road or street construction.

Whether a warning sign, such as a stop ahead sign, is installed in the first instance is, pursuant to Section 2M–3 of the manual, a discretionary decision within ODOT's engineering judgment. However, as previously explained, once ODOT elected in 1975 to erect the stop ahead signs, it was under a duty to comply with the mandatory requirements, if any, imposed by its own manual.

Table S–1 of the manual sets forth the appropriate advanced warning distance required in order to allow for adequate deceleration on Ohio's highways. On a highway such as S.R. 73, with a prevailing approach speed of fifty-five miles per hour, the manual mandates that an advance warning sign

be placed *at a minimum* of seven hundred fifty feet in advance of a stop sign. Furthermore, Section 2M–3 of the manual specifically states that "the distance indicated in Table S–1 for proper posting of warning signs may be adjusted where necessary as a function of existing conditions and engineering judgment." Although this language has been interpreted as giving ODOT a certain degree of flexibility in the placement of warning signs, it does not render the minimum requirements in Table S–1 nonmandatory. *Perkins, supra.*

██ In this case, appellee correctly concedes that the placement of a stop ahead sign four hundred fifty from the stop sign would not, in itself, satisfy ODOT's duty of care as defined by Table S–1 of the manual. Nevertheless, appellee contends that the stop ahead sign located at eleven hundred feet from the stop sign fulfilled the manual requirements. Since the stop ahead sign located at eleven hundred feet from the stop sign is clearly within the seven hundred fifty foot minimum, the mandatory provision in Table S–1 was met.

Appellant has further failed to produce any evidence that ODOT abused its discretion in placing the sign further than 750 feet from the stop sign. There is no evidence that the two signs confused drivers; especially in light of testimony that it would take only three seconds to travel between the first and second set of stop ahead signs, as well as expert testimony that the two sets of stop ahead signs gave drivers more than an adequate warning of the upcoming stop. The trial court's determination that ODOT acted reasonably and in full compliance with the manual in the placement of the stop ahead signs was correct.

██ Likewise, appellant argues that the improper placement of a destination distance sign on S.R. 73 was a proximate cause of the accident. A destination distance sign is a guide sign intended to inform the driver of the route to his destination.

Section 2R–2 of the manual states that:

"In rural areas, D–1–72 Destination signs *should* be located not less than 350 feet nor more than 500 feet in advance of the intersection. D–1–96 Destination signs *shall* be located not less than 500 feet in advance of the intersection. * * * " (Emphasis added.)

Furthermore, Section 2E–2 of the manual states that, in rural areas, two signs for two different purposes should not be located closer together than two hundred feet along a highway.

The trial court determined that the destination distance sign in question was a D–1–72 sign located in a rural area. Appellant argues that this determination was against the manifest weight of the evidence due to testimony by

Larry Sutherland that the destination distance sign in question was a D–1–96 sign as defined by the manual.

Appellant's reliance on Sutherland's testimony is unconvincing. Sutherland did not testify that the sign was a D–1–96 sign. Rather, he merely clarified the requirements of the manual regarding the classification of destination distance signs. The evidence at trial supports the trial court's finding that the destination distance sign on rural S.R. 73 was a D–1–72 sign. Hence, the trial court did not err in its findings that the sign should have been located between three hundred fifty and five hundred feet from the intersection, and that there was no mandatory duty to place the mileage marker at least five hundred feet from the stop sign.

■ The trial court further determined that ODOT was not negligent in its discretionary placement of the sign two hundred sixty-four feet from the intersection, which was one hundred eighty-six feet from the stop ahead sign, because neither Section 2R–2 nor Section 2E–2 of the manual created a mandatory duty, and because appellant failed to prove by a preponderance of the evidence that the placement contrary to the manual recommendations constituted negligence.

■ Appellant relies on the testimony of John Stemley and Vaughn Wilson to support his contention that ODOT abused its discretion in its placement of the mileage marker because it was placed too close to the intersection and the stop sign. Appellant argues that their testimony supports a determination that the destination distance sign was placed so that it blocked a driver's vision of the right-hand stop sign in violation of good engineering judgment. The evidence of the alleged obstruction was a series of seven pictures taken by Sutherland in 1988, wherein three pictures show partial or total obstruction by the mileage sign. However, appellee produced conflicting evidence from which reasonable minds could conclude that ODOT acted in a reasonable manner and did not abuse its discretion in its placement of the destination distance sign, and that they weighed the utility of placing the sign at two hundred sixty-four feet, rather than three hundred fifty, from the stop sign. Specifically, Sutherland testified that, in order to install all of the signs, it was necessary to place one sign within two hundred feet of another and the destination distance sign was located less than three hundred fifty feet from the stop sign. Furthermore, appellant produced no evidence that ODOT's placement of the mileage marker pursuant to Section 2E–2 and Section 2R–2 caused any facet of his accident, including an obstruction of signs.

Appellant's third assignment of error is overruled.

 Since ODOT did not breach its duty to safely maintain the intersection of State Routes 32 and 73, appellant's argument under assignment of error number two, that appellee's negligence was one of the proximate causes of appellant's accident, is not applicable. There was ample evidence to support the trial court's ruling that the sole proximate cause of appellant's injuries was Shannon's failure to stop at the stop sign, particularly in light of his testimony that he did not see either of the sets of stop ahead signs.

Appellant's second assignment of error is overruled.

 Similarly, appellant's seventh assignment of error, which contends that the trial court's determination that the intersection was not a public nuisance was against the manifest weight of the evidence, is not well taken. Although the Ohio Supreme Court overruled prior decisions to the contrary in *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789, and ruled that the government may be held liable on the theory of nuisance for damages caused by the malfunctioning of a traffic signal, the evidence herein did not establish a public nuisance because, as previously discussed, the testimony did not show that ODOT failed to perform a legal duty or that ODOT intentionally maintained a hazardous condition on the highway.

Appellant's seventh assignment of error is overruled.

The foregoing specific discussions of appellant's assignments of error in regard to manifest weight of the evidence disposed of appellant's general objection in his ninth assignment of error, which is also overruled.

 In his sixth assignment of error, appellant challenges the admissibility of testimony by Vaughn Wilson, ODOT's traffic engineer, about the cause of the two fatal accidents at the intersection of State Routes 73 and 32 in 1975 because his testimony was based on ODOT's accident reports which were not admitted as exhibits.

The accident reports were admissible as public records pursuant to Evid.R. 803(8) and should have been produced into evidence rather than having a witness review them and testify about their contents. However, the relevance was slight given the changes made at the intersection since 1975.

Appellant has not demonstrated any prejudice by the trial court's admission of Wilson's testimony about the accident reports.

 Similarly, appellant challenges the admission of ODOT's construction diaries which recorded roadwork completed on S.R. 73 in 1986 as unauthenticated and unidentified. Evid.R. 803(8) provides that records kept by a public office or agency which set forth the activities of the office or agency are admissible as public records. ODOT's construction diaries are public records

pursuant to the rule's definition. No objection was made specifically to their authenticity. Furthermore, it does not appear that the construction was a factor in the decision; hence, any error was not prejudicial.

Appellant's sixth assignment of error is overruled.

Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and PEGGY BRYANT, JJ., concur.