OPINIONS OF THE SUPREME COURT OF OHIO
          The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
          Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
          NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Franks, Admr., et al., Appellants and Cross-Appellees, v.
Lopez, f.k.a. Munguia, Appellant and Cross-Appellee; Sandusky
Township Board of Trustees et al., Appellees and Cross-
Appellants.
[Cite as Franks v. Lopez (1994),      Ohio St.3d      .]
Streets and highways -- Interpreting R.C. 2744.02(B)(3) to
          determine when a political subdivision may be liable for
          failing to keep its roadways "free from nuisance" --
          Definition of "nuisance" as found in R.C. 2744.02(B)(3)
          does not embrace design and construction defects or
          failure to erect signage or guardrails.
          (No. 92-1030 -- Submitted February 2, 1994 -- Decided May
25, 1994.)
          Appeal and Cross-Appeal from the Court of Appeals for
Sandusky County, No. S-91-18.
          This case concerns a one-vehicle accident on September 5,
1987, in which the driver, Rhonda Lopez, was injured and two of
her passengers were killed.  The accident occurred at the
intersection of two rural township roads, when Lopez's car
failed to negotiate the curve, left the road and plunged into
the Sandusky River.
          Separate wrongful death actions were brought by appellants
and cross-appellees Lisa Franks, administrator of the estate of
Leslie Acosta, and M. Carol Bryant, administrator of the estate
of Donna Hackworth, against, inter alia, (1) appellees and
cross-appellants Board of Commissioners of Sandusky County and
the county engineer (collectively referred to as the "county"),
(2) appellee and cross-appellant Sandusky Township Board of
Trustees ("township"), (3) appellee and cross-appellant Rhonda
Lopez, and (4) Adrian Zavala (Leslie Acosta's boyfriend, who
allegedly was pursuing Lopez).  Lopez filed cross-claims
against the county and township for indemnification and for her
own injuries resulting from the accident.  These cases were
consolidated in the trial court.
          The claims against the political subdivisions focused on
their alleged failure to keep the roads "free from nuisance" in
contravention of R.C. 2744.02(B)(3).  In addition, appellants
asserted the county had a statutory duty to install a guardrail

at the intersection.

The county and township moved for summary judgment.  The trial court granted summary judgment for the township on the basis of sovereign immunity pursuant to R.C. Chapter 2744.  In addition, the court granted summary judgment for the county, ruling that as the county had transferred the roads in question to the township in 1970 it owed no duty in 1987, nor did any duty derive from its past control of the roads.  The court also determined that R.C. 5591.36 did not require the county to place a guardrail at the intersection.

Upon appeal, the court of appeals affirmed that part of the trial court's judgment which held that the county and township were immune from suit for the alleged defective design and construction and lack of signage.  However, the court reversed part of the trial court's judgment, and held that questions of fact remain as to whether the county should have installed a guardrail pursuant to R.C. 5591.36 and whether the township breached its duty to keep the roads "free from nuisance" by failing to comply with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways.

The cause is now before this court pursuant to the allowance of motions and cross-motions to certify the record.

Edward Van Gunten & Co., L.P.A., Edward A. Van Gunten and Phillip Browarsky, for appellants and cross-appellees Lisa Franks and M. Carol Bryant.
Cooper, Straub, Walinski & Cramer, Co., L.P.A., and Thomas J. Tucker, for appellant and cross-appellee Rhonda L. Lopez.
Ritter, Robinson, McCready & James and William S. McCready, for appellee and cross-appellant Sandusky Township Board of Trustees.
Marshall & Melhorn, James H. Irmen and Jessica R. Christy, for appellees and cross-appellants Sandusky County Board of Commissioners and Sandusky County Engineer.
Amer Cunningham Brennan Co., L.P.A., Richard T. Cunningham and Thomas M. Saxer, urging reversal in part for amicus curiae, Ohio Academy of Trial Lawyers.
John E. Gotherman, urging affirmance in part for amicus curiae, Ohio Municipal League.

Francis E. Sweeney, Sr., J.   Today we are again asked to interpret R.C. 2744.02(B)(3) to determine when a political subdivision may be liable for failing to keep its roadways "free from nuisance."  We are also asked to decide whether the county could be liable for its alleged failure to install a guardrail pursuant to R.C. 5591.36.  For the reasons which follow, we decline to expand our definition of the term "nuisance" as found in R.C. 2744.02(B)(3) to embrace design and construction defects or the failure to erect signage or guardrails.  However, we hold that questions of fact remain as to whether the county had a statutory duty to install a guardrail at the intersection.  Accordingly, we affirm the judgment of the court of appeals.

Appellants seek to impose liability upon the political subdivisions for what they allege is a dangerous intersection. Appellants believe that the intersection was defectively designed, constructed, and maintained.  The appellants assert

that the combination of the lack of a posted speed limit, lack of lighting at night, lack of an adequate warning sign visible at night, a sharp and sudden curve, uneven pavement, a deficient cross slope, proximity to the river and the absence of a guardrail made the curve deadly and created a nuisance. The county and township respond that they are immune from liability because of sovereign immunity.  Specifically, they argue they are immune under R.C. Chapter 2744 because their actions and omissions with regard to these roads were "governmental functions" as defined in R.C. 2744.01(C)(2)(e), (j) and (l),1 and that the "discretion" defenses of R.C. 2744.03(A)(3) and R.C. 2744.03(A)(5) apply.

R.C. Chapter 2744, the Political Subdivision Tort Liability Act, was enacted in response to the judicial abolishment of the doctrine of sovereign immunity.  R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for damages for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision.  R.C. 2744.02(B) lists several exceptions to the general grant of sovereign immunity.  The subsection relevant here is R.C. 2744.02(B)(3), which provides that political subdivisions are liable for injury caused "by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance * * *."

However, the Act also enumerates defenses that can be asserted to avoid liability.  Pertinent to our discussion are those defenses contained within R.C. 2744.03(A)(3) and (5).

R.C. 2744.03(A)(3) provides immunity to a political subdivision where the act or failure to act by an employee was within the discretion of the employee as to "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(5) provides that a political subdivision is "immune from liability if the injury [or] death * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

In Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, we considered a political subdivision's duty to keep its roads free of nuisance.

In Manufacturer's, we addressed whether a township's duty under R.C. 2744.02(B)(3) to keep the road free from nuisance included ensuring that corn growing in the road's right-of-way did not obstruct a driver's visibility.  Because of R.C. Chapter 2744's recent enactment, Manufacturer's provided our first opportunity to construe this law.  In deciding the issue, we considered prior case law interpreting R.C. 723.01,2 which obligates municipalities to keep their roads free from nuisance.

Relevant to our discussion today, we cited Fankhauser v. Mansfield (1969), 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789, where we held that a malfunctioning traffic signal can be a nuisance to orderly urban street traffic, and Robert Neff &

Sons v. Lancaster (1970), 21 Ohio St.2d 31, 50 O.O.2d 80, 254 N.E.2d 693, where we determined that an overhanging tree limb impeding ordinary traffic could be a nuisance within the meaning of R.C. 723.01.

After construing prior case law, we decided that in determining a township's duty, the proper focus should be on whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road.

We held that a permanent obstruction to visibility in the right-of-way which renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel can be a nuisance for which a political subdivision may be liable pursuant to R.C. 2744.02(B)(3). Id. at paragraph one of the syllabus.

In a similar vein, we find that the township's alleged failure to maintain the signage already in place may constitute an actionable nuisance claim. A sign which has lost its capacity to reflect is as much an impediment to the safe flow of traffic as a malfunctioning traffic light, overhanging branches or foliage obstructing a driver's view. Due to the proximity of the Sandusky River to the intersection of the two township roads, notice of the curve was vital to the safety of ordinary traffic.

This does not end the analysis however. In Vogel v. Wells (1991), 57 Ohio St.3d 91, 97, 566 N.E.2d 154, 160, a nuisance case decided in part under R.C. 723.01, we reiterated that the political subdivision must have had "either actual or constructive knowledge of the nuisance" before liability can be imposed. There is constructive knowledge if "such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger * * *." Beebe v. Toledo (1958), 168 Ohio St. 203, 207, 6 O.O.2d 1, 3, 151 N.E.2d 738, 741.

The appellate court correctly held that appellants' evidence created a question of fact as to whether the township had actual or constructive notice. Appellants presented (1) an affidavit from an engineering expert describing the hazard, accompanied by photographic exhibits demonstrating the obviousness of the danger posed by the failure to maintain the reflectorized sign; and (2) the deposition testimony of a nearby resident that there had been at least three previous accidents at this intersection and that the condition of the small directional arrow sign had existed for a substantial period of time. This is ample evidence to create a question of fact concerning the existence of notice.

Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so.

Moreover, it is undisputed that the directional arrow sign

did not comply with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways as required by R.C. 4511.11(A). The evidence indicated that in addition to not being reflectorized, the sign was smaller than the recommended size and was not properly placed or checked as required by the manual. While the installation of traffic control devices by a political subdivision may be discretionary pursuant to the manual, once the decision to install has been made, the implementation of that decision is not immune from liability. Winwood v. Dayton (1988), 37 Ohio St.3d 282, 525 N.E.2d 808.

Appellants, however, not content with this finding, have asked us to expand our nuisance definition to include design and construction defects and the failure to erect signage. This we decline to do. This court has never held that defective design or construction or lack of signage constitutes a nuisance. These categories simply do not constitute a nuisance as this term has been defined by this court. Additionally, these allegations involve discretionary functions as provided in R.C. 2744.03(A)(3) and (5). Thus, the defenses found in R.C. 2744.03(A)(3) and (5) preclude the imposition of liability on a political subdivision for any acts or omissions related to these discretionary functions. Therefore, appellants' claims pertaining to defective design and construction and the failure to install signage must fail. See, e.g., Williamson v. Pavlovich (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242; Winwood, supra; Fankhauser, supra. Summary judgment was appropriate on these issues.

Appellants also sought to impose liability upon all the political subdivision defendants based on the absence of a guardrail. Appellants assert the county had a duty to install a guardrail under R.C. 5591.36, and that since the county designed and built both of the roads in question, it should have installed a guardrail during construction. Further, they argue that the township is liable because the lack of a guardrail constituted a nuisance under R.C. 2744.02(B)(3).

However, political subdivisions have broad discretion in determining whether to install signage. See Winwood, supra. This is equally true regarding the discretionary decision as to whether to erect a guardrail. Notwithstanding this broad grant of discretion, however, R.C. 5591.36 provides:

"* * * The board [of county commissioners] shall * * * protect, by suitable guardrails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition."

R.C. 5591.37 imposes liability upon the county for accidents or damages resulting from its failure to comply with R.C. 5591.36.

The court of appeals correctly noted that R.C. 2744.02(B)(5) provides an exception to immunity where "liability is expressly imposed upon the political subdivision by a section of the Revised Code, including * * * [section] 5591.37 * * *." Hence, R.C. Chapter 2744 explicitly includes one of the statutes relied upon by appellants as an exception to immunity.

The county contends the elements of R.C. 5591.36 were not met and, therefore, liability cannot be imposed. Essentially

the county asserts that "perpendicular" means ninety degrees, the bank in question was not a "wash bank," and even if it was a "wash bank," it was not adjacent to the highway.

In finding that factual questions remain as to whether the county complied with R.C. 5591.36, the appellate court cited Jenkins v. Harrison Twp. Trustees (Oct. 4, 1982), Scioto App. No. 1385, unreported, 1982 WL 3545, where that court held that construing "perpendicular wash bank" to mean only a ninety-degree wash bank renders R.C. 5591.36 "almost meaningless."

In Jenkins, the court stated:

"* * * Washbanks, over time and in accordance with general principles of rainwater, sediment, and gravity, gradually erode and change their angles. Nature carries no protractor.

"Statutes must be interpreted in a manner rendering them effective, just, reasonable, and capable of execution."

In Jenkins, the court found the common meaning of "perpendicular" is "extremely steep" and held that a wash bank which fell eighteen feet at an angle of sixty-five to seventy degrees was perpendicular within the meaning of the statute. The appellate court in the instant case agreed with the Jenkins holding and concluded that "perpendicular" can include a slope of seventy degrees, which appellants' evidence revealed the slope in question to be, although the county and township dispute this finding.

Accordingly, the appellate court ruled that questions of fact exist as to whether the bank in question is a "wash bank," whether the wash bank is adjacent to a public highway, and whether the slope is "perpendicular." We agree. The court of appeals' decision on this issue is affirmed.

To summarize, we conclude questions of fact remain as to (1) whether the township breached its duty to keep its roads "free from nuisance" for its alleged failure to maintain the reflectorized sign and its alleged failure to comply with the manual, and (2) whether the county had a duty to install a guardrail pursuant to R.C. 5591.36. We further find, as a matter of law, that the alleged defective design and construction and the failure to erect proper signage do not constitute a nuisance within the meaning of R.C. 2744.02(B)(3). Therefore, the county and township are immune from suit for these claims. Finally, we note the negligence claims against Lopez and Zavala, as well as the statute of limitations defense asserted against Lopez, are still intact and remain to be resolved by the trial court.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas and Mahoney, JJ., concur.

Wright, J., concurs in judgment only.

Pfeifer, J., concurs in part and dissents in part.

Joseph E. Mahoney, J., of the Eleventh Appellate District, sitting for Resnick, J.


Footnotes:
1. R.C. 2744.01(C)(2)(e), (j) and (l) include the following in the definition of "governmental" function:

"(e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys,

sidewalks, bridges, aqueducts, viaducts, and public grounds;

"* * *

"(j)  The regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices;

"* * *

"(l)  The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system[.]"

2.  R.C. 723.01 provides:

"Municipal corporations shall have special power to regulate the use of the streets.  Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

Pfeifer, J., concurring in part and dissenting in part.  I concur in the majority's holding that questions of fact remain regarding the township's alleged negligence in failing to maintain the reflectorized sign, its failure to comply with the manual, and the county's duty to install a guardrail.

I dissent from the holding that the township and county are immune from claims for defective design and construction and the failure to erect proper signage.  For the reasons stated in my concurrence in Garrett v. Sandusky (1993) 68 Ohio St. 3d 139, 142, 624 N.E.2d 704, 707, it is contrary to the Ohio Constitution to hold that a governmental entity is immune from suit simply by virtue of its status as sovereign.