Knickel, Appellee, *v.* Department of Transportation, Appellant.

(No. 75AP-538—Decided March 16, 1976.)

Mr. *Nelson Lancione,* for appellee.
Mr. *William J. Brown,* attorney general, Mr. *Ronald Boyd Brown* and Mr. *William J. Mooney,* for appellant.

Strausbaugh, P. J. This is an appeal by defendant from a judgment in the Court of Claims in favor of plaintiff in the sum of $4,000.

The trial court sets forth the facts in part, in a carefully well-drawn opinion, as follows:

"This case came on for trial on the complaint and answer. The plaintiff claims that defendant was negligent in maintaining a designated area of U. R. [*sic*] Route 23 in Delaware County, Ohio, on July 11, 1974. As a result plaintiff claims damages for personal injury, property damage and expenses.

"Defendant admits the operative facts, denies negligence, additionally alleges lack of notice of the road condition and denies injury. Affirmatively defendant alleges contributory negligence.

"At the outset we observe that the road defect was not open and obvious to plaintiff and there was no failure on his part to exercise ordinary care. There were no facts inferrable from plaintiff's evidence and a failure (to an absence) of proof on defendant's part of any contributory negligence of plaintiff.

"The operative facts are not in controversy. Plaintiff was operating his 1967 Oldsmobile in the south bound passing lane (a four lane reinforced cement divided highway with grass median) at a speed between 47 and 55 miles per hour. He was behind a vehicle ahead about four or five car lengths. The time was about 5:30 p. m. on July 11, 1974, on a bright, clear, dry day and the road was straight. There were other vehicles in the driving lane to the plaintiff's right.

"The first notice plaintiff had of a dangerous situation was when the back-end of the vehicle ahead raised and it bounced on the road. Almost instantaneously plaintiff had the sensation of 'flying through the air', and coming back down on the road 'like an explosion'. The left rear tire burst and the vehicle was otherwise damaged so as to be considered a total loss.

"The abutting end of the concrete slabs on each side of an expansion joint had heaved up two feet or a little more. Each concrete slab forming the incline to the apex was approximately twelve feet in length. In popular parlance this condition caused plaintiff and his vehicle to do an 'Evel Knieval'. The situation occurred about one mile south of Delaware near the intersection of Hull Drive.

"The evidence shows that the cement concrete roadway was installed in 1954 or 1955 and that the pavement had been deteriorating. Repairs were being made by the Department constantly. Plans and specifications had been prepared and bids advertised at the time of the incident. The repair and rehabilitation extended a distance of 11.6 miles from a point in Franklin County to the City of Delaware (includes the area in question). The rehabilitation, among other things, included a resurfacing of the cement pavement with 'blacktop' and damaged pavement

joints were to be repaired prior to resurfacing. The cost of the project totalled $3.5 million dollars.

"The problem of relieving pressure build-up in rigid pavements had become an increasing concern to the Department since the mid 1960's. A design policy memorandum in regard thereto was issued August 28, 1972 and superceded by memorandum dated January 3, 1975. Both memorandums state pavement blow-ups create safety hazards and maintenance problems.

"A memorandum dated June 13, 1975, circulated through the Department, observed, with respect to pressure build-up, that upheaval of the pavement occurs suddenly, often with little or no advance indication. Traffic hazards range from dislodged pieces of concrete on the road surface to humps in the pavement. Installation of pressure relief joints in existing pavement where build-up is suspected was recommended and is being performed.

"There is no evidence as to the number or extent of blow-outs in the area south of Delaware and in the vicinity of the blow-up here in question.

"The question of the case is: Can the defendant Department be held liable under the facts, where it has general, but no particular notice as to the deterioration of the roadway, giving rise to plaintiff's injury: * * *

"The conclusion of the topic discussion is that foreseeability or risk of harm is only one of the factors important in determining negligence in particular cases.

"An argument is advanced on defendant's behalf that the situation created was unavoidable. As above indicated the situation was not unexpected as to prospective hazardous traffic conditions and it was only unusual in the fact of the size of the blow-up confronting the plaintiff. To buttress unavoidability defendant claims that budgetary and priority concerns made an earlier repair and rehabilitation impossible.

"We conclude therefore the condition causing plaintiff's Knickel's injury being an active one, created a trap for the unwary or unlucky user of the public highway, that notice of the particular condition is not a requirement to

find the defendant liable to plaintiff, and we so conclude. The record shows notice of the general condition is conceded. That is, there was an awareness that a hazardous condition was likely to occur, but where, when and to what extent was impossible of precise ascertainment. * * *

"We conclude on the issues joined and the evidence that plaintiff is entitled to judgment in the total amount of $4,000.00. A judgment is, therefore, concurrently entered."

It is from this judgment that this appeal is taken.

On September 22, 1975, the trial court stated:

" * * * [O]n defendant's motion, in further amplification of the facts and conclusions heretofore filed, * * * [we find] the ultimate facts to be:

"1.) The court has jurisdiction.

"2.) The defendant had the duty to exercise reasonable care in maintaining U. S. Route 23 in Delaware County, Ohio.

"3.) The defendant had notice of the dangerous condition of the said highway which resulted in an active condition causing plaintiff's injury.

"4.) That plaintiff suffered $4,000.00 loss by way of personal injury and property damage.

"5.) That plaintiff was in the exercise of ordinary care.

"The Court concludes, as a matter of law, that defendant failed to exercise reasonable care by reason of which it is liable for plaintiff's damage. * * *"

Defendant advances three assignments of error:

"1. The trial court erred in finding that the Department of Transportation had notice of the condition causing the highway to erupt.

"2. The trial court erred in holding that the Department of Transportation had failed to exercise reasonable care.

"3. The trial court erred in not holding that plaintiff's injuries were the result of an unavoidable accident."

A great deal of expert testimony concerning highway construction with respect to blow-ups was presented. The evidence clearly shows that a blow-up is a safety hazard in concrete highways which has existed for many years. Gen-

erally, the hazard is foreseeable. For over 50 years this condition has been known. Research has been done by experts to determine the cause of blow-ups and to prevent their occurrence. Ohio has been a forefront leader in this research, however, much is yet unknown; specifically, it cannot be predicted where or when a blow-up will occur or what its magnitude will be.

Blow-ups occur in concrete, as opposed to macadam or asphalt type surfaces, as a result of some sort of internal stress. They occur at the joints of the concrete squares. In hot months there seems to be a greater frequency of blow-ups; they generally do not occur in newly built stretches of concrete. Generally, the blow-up is of much smaller magnitude than the one involved in this case and usually there are no injuries. The best way to prevent a blow-up where there is a general indication they may occur is to drill out the joints in the pavement and construct pressure relief joints. Although it may be impossible to prevent blow-ups, they can be minimized, however, at a high economic cost.

We find that although the state is not an insurer of the safety of its highways, the state has a duty to maintain its highways in a reasonably safe condition. We find that upon the findings of fact by the trial court, based upon the evidence in this case, there is a general foreseeability that blow-ups will occur and that someone will be injured as the result. We further find that although there is no way to predict where, when, or with what magnitude a blow-up will occur, they can be prevented by the construction of non-concrete highways, and that blow-ups can further be minimized by the construction of pressure relief joints in order to minimize the danger from blow-ups.

We are faced with the question of who will bear the the loss due to sudden blow-ups—the state of Ohio, which has the duty to maintain highways in a reasonably safe condition, or the general public who uses the highways. We find that the better answer is the state which has the burden to maintain highways in a reasonably safe condition.

The state maintains that blow-ups are unavoidable accidents and for that reason the state should not be held ac-

countable. The burden of proving unavoidable accident is upon the defendant. The trier of the facts in this case has found that the burden of proof was not sustained by the state; therefore, such defense was rejected by the trial court. We hold that such finding by the trial court is sustained by the evidence and there is no abuse of discretion by the trial court in making such finding.

The question of whether the state has done all that a reasonable person charged with the maintenance of the highways in a safe condition should have done has been equivocally answered by the evidence presented by the state. The defendant asserts that the absolute elimination of the possibility of blow-ups would require the destruction of concrete highways and the substitution of asphalt or macadam type roads, and that such would be too costly to be economically borne by the state, as would the installation of pressure relief joints upon all concrete highways. This well may be true. We can understand the dilemma that the state may be faced with in considering the economical alternatives in attempting to solve the problem, and that it is sometimes less expensive to pay the cost of damages caused by a hazard than to pay the cost of eliminating the hazard. However, that is a policy and an economic question to be solved by the legislative and administrative bodies of the state, rather than the judiciary. We find that the trial court did not err in finding that the defendant had general notice of the condition causing the highway to erupt; that the trial court did not err in holding that the defendant had failed to exercise reasonable care; and that the trial court did not err in finding the absence of an unavoidable accident, for the reason that the defendant did not maintain its burden of proof. For the foregoing reasons, defendant's three assignments of error are overruled, and the judgment is affirmed.

*Judgment affirmed.*

REILLY and MCCORMAC, JJ., concur.