BERGER et al., Appellees,

v.

CITY OF PORT CLINTON, Appellant.*

[Cite as *Berger v. Port Clinton* (1993), 96 Ohio App.3d 45.]

Court of Appeals of Ohio,
Ottawa County.

No. 92–OT–037.

Decided May 14, 1993.

---

* Reporter's Note: A discretionary appeal and cross-appeal to the Supreme Court of Ohio were dismissed as having been improvidently allowed in (1994), 71 Ohio St.3d 1213, 644 N.E.2d 405.

*Steven Spitler* and *Mary Patricia Toth,* for appellees.

*John Coppeler,* for appellant.

---

*Per Curiam.*

This appeal is from the judgment of the Ottawa County Court of Common Pleas. Appellant, the city of Port Clinton, is appealing the judgment entered in

favor of appellees, Kenneth J. Berger and Nancy Berger. For the reasons discussed below, we affirm, in part, and reverse, in part.

The facts of this case are as follows. On October 17, 1988, Kenneth Berger was taking his customary morning walk with two friends, John Crosser and Gary Rasmussen. As Berger proceeded along a public sidewalk in Port Clinton, he stepped into an uncovered manhole and was injured. After assisting Berger, Rasmussen noticed the manhold cover in the nearby grass and replaced it. Crosser later reported the incident to Max McLaury, the director of Public Safety and Service for Port Clinton. Subsequently, Berger brought this negligence action against the city of Port Clinton.

On January 8, 1992, the jury returned a verdict in favor of the Bergers in the amount of $75,000. Following a subsequent hearing on a motion for the determination of collateral benefits, the trial court reduced the award by $499.83, which it determined was the amount of collateral benefits received. On June 2, 1992, final judgment in the amount of $74,500.17 was entered in favor of the Bergers.

It is from such judgment that the city of Port Clinton raises the following four assignments of error:

"1. The Trial Court erred in overruling defendant-appellant's motion for summary judgment[.] * * *

"2. The Trial Court erred in overruling defendant-appellant's motion in limine[.] * * *

"3. The Trial Court erred in instructing the jury on the issue of constructive notice[.] * * *

"4. The Trial Court erred in the determination of collateral benefits that were deducted from the jury verdict[.] * * * "

As its first assignment of error, the city argues that the trial court erred in failing to grant its motion for summary judgment. Specifically, the city argues that it did not have actual or constructive notice that the manhole cover had been removed.

Initially, this court notes that Civ.R. 56(C) governs the granting of a motion for summary judgment as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary

judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the court held that summary judgment may be granted "upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

We now address the more specific question as to whether summary judgment was appropriate given the Bergers' negligence claim against the city of Port Clinton. R.C. 723.01 imposes a duty upon municipal corporations to keep public roads, sidewalks, and other public places "open, in repair, and free from nuisance." Further, R.C. 2744.02(B)(3) provides that a municipal corporation is "liable for injury, death, or loss to persons or property caused by [the municipal corporation's] failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance." However, a municipality can be held liable for failing to maintain public ways only upon proof that such municipality's " 'agents or officers actually created the faulty condition from which injury resulted or that [the municipality] had notice thereof, actual or constructive.' " *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 60, 29 OBR 441, 442, 505 N.E.2d 957, 958, quoting *Cleveland v. Amato* (1931), 123 Ohio St. 575, 9 Ohio Law Abs. 606, 176 N.E. 227, paragraph one of the syllabus. Further, constructive notice may be inferred where it is foreseeable that a hazardous condition is likely to occur. *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335, 339, 3 O.O.3d 413, 415, 361 N.E.2d 486, 489.

In the present case, the city of Port Clinton argued in support of its motion for summary judgment that it had no constructive notice that the manhole cover was missing. The trial court had the following testimony before it in deciding the motion for summary judgment. John Crosser, who had accompanied Kenneth Berger on his walk, contacted Max McLaury, the director of Public Safety and Service for Port Clinton in order to inform him of the incident. Crosser, by way of affidavit, testified as follows concerning his conversation with McLaury:

"Later that morning, roughly 8:00 a.m. to 8:30 a.m., (10–17–88) I phoned Max McLaury, Safety Director, to notify him of the manhole incident. Max said he had not heard about Berger. falling into the manhole. I told Max we had been walking on Fulton to Perry and that we were on Perry just west of Fulton when it happened. *Max said 'I know exactly where that's at. We have had problems there before with manhole covers being taken off by kids.'* I told Max that I wanted to make him aware of the missing cover, and he said he would send a crew over right away to replace it." (Emphasis added.)

In contrast, Max McLaury testified by way of deposition as follows concerning the conversation he had with John Crosser:

"Q    Okay. Yes. I guess what I asked you before was did you recall saying to John and I quoted, I know exactly where that's at. We've had problems there before with manhole covers being taken off by kids. You indicated you didn't recall the substance—

"A    I don't remember ever having that conversation with him.

"Q    Okay.

"A    I know exactly where that particular one is because I had had a call one time previously that a lady told me that it was part way off and it looked like kids had been playing with it and I sent the police out to check and it was in place.

"Q    Okay.

"A    You know.

"Q    When was that, when do you—

"A    It was years ago.

"Q    Okay. So it's your testimony then aside from that incident, years ago, you don't recall any other incidents?

"A    No.

"Q    Involving this manhole cover?

"A    No."

Crosser's testimony, although contradicted, is evidence that McLaury knew that this particular manhole cover had been removed several times by children prior to the incident in question. It follows that a genuine issue of material fact existed as to whether the city of Port Clinton had constructive notice that the manhole cover was missing on the date Kenneth Berger was injured. Therefore as a matter of law, the city of Port Clinton was not entitled to summary judgment as to the issue of constructive notice. Accordingly, the first assignment of error is found not well taken.

As a second assignment of error, the city of Port Clinton argues that the trial court erred in admitting evidence that, after Berger was injured, the city of Port Clinton tack welded the manhole cover shut, thus preventing its removal by unauthorized persons. The city argues that such testimony was inadmissible to prove negligence under Evid.R. 407.

Evid. 407 provides as follows:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

In the present case, Richard Packard, the street supervisor for the city of Port Clinton, testified that it was not practical to tack weld manhole covers shut in order to prevent their removal by unauthorized persons. The trial court, over the city's objection, then permitted the following cross-examination of Packard:

"Q Your response to Mr. Crosser's questions, you just previously indicated that you do not feel that it would be feasible to tack weld manhole covers to keep them off?

"MR. COPPELER: I am going to object, Your Honor, because it misstates my question, which was, 'Why not tack weld all the manhole covers in the City?'

"Q Okay. In response to Mr. Crosser's—

"MR. COPPELER: I didn't say as to a particular one. For the record, my name is Coppeler.

"Q Excuse me. In response to Mr. Coppeler's question, you indicated that would not be feasible, correct?

"A That is correct.

"Q However, on the date that you were dispatched to the scene of Mr. Berger's accident, October 17th, 1988, that is precisely what you did, is it not?

"A Yes, it is.

"Q Tack welded it?

"A Yes."

We find that Packard's testimony concerning the subsequent tack welding of the manhole cover went to the controverted feasibility of precautionary measures that could have been taken by the city of Port Clinton. Such testimony is specifically permitted under Evid.R. 407. Accordingly, the second assignment of error is found not well taken.

■ As its third assignment of error, the city of Port Clinton argues that the trial court improperly instructed the jury on the issue of constructive notice. The trial court instructed the jury as follows:

"The test for determining whether the City of Port Clinton had constructive notice that the manhole cover would be removed and that injury would result is whether that danger existed for a sufficient period of time reasonably to support the inference that the failure to prevent its removal was attributable to the lack of ordinary care."

The city argues that such instruction improperly would create liability whenever a manhole cover was removed by unauthorized persons.

We disagree. The jury was instructed to determine whether the "danger existed for a sufficient period of time" in order to attribute constructive notice to the city of Port Clinton. There was evidence introduced at trial that the removal of the particular manhole cover in question was not an isolated incident. Testimony established that the city's director of public safety knew of several previous incidents where this particular manhole cover had been removed by children. Therefore, we hold that the jury instruction as given was a " 'correct statement of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.' " *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832, quoting Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. Accordingly, the third assignment of error is found not well taken.

■ As its fourth assignment of error, the city of Port Clinton argues that the trial court erred in determining the amount of collateral benefits received by Kenneth Berger that would reduce the amount awarded by the jury.

R.C. 2744.05 codifies the collateral source rule with respect to awards against political subdivisions as follows:

"If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. * * *"

In the present case, Kenneth Berger received $9,368.17 in medical benefits from his insurance company. However, the trial court did not reduce the jury award by this amount of benefits. Instead, the trial court determined that the amount of $9,368.17 was to be offset by $8,868.34 representing the amount that Kenneth Berger and his employer had paid in premiums for the medical insurance coverage. Thus, the trial court reduced the jury award by only $499.83.

We find no authority in R.C. 2744.05 that would permit the amount of collateral benefits received from insurance claims to be reduced by any premiums paid by the claimant in obtaining such insurance. Thus, the trial court should have reduced the jury award by the total amount of medical benefits received, *i.e.,* $9,368.17. Accordingly, the fourth assignment of error is found well taken.

On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part, in accordance with the above decision. It is ordered that the parties equally share in the court costs of this appeal.

*Judgment affirmed in part*
*and reversed in part.*

GLASSER, P.J., ABOOD and SHERCK, JJ., concur.