**GOLEMBIEWSKI et al.**

v.

**OHIO DEPARTMENT OF TRANSPORTATION.**

Court of Claims of Ohio.

No. 95–03894.

Decided Jan. 9, 1997.

*Donald E. Caravona & Associates* and *Donald E. Caravona*, for plaintiffs.

*Betty D. Montgomery*, Attorney General, *Michael J. Valentine* and *Peter E. DeMarco*, Assistant Attorneys General, for defendant.

J. WARREN BETTIS, Judge.

On August 24, 1994, plaintiff, Marcus A. Golembiewski ("Golembiewski"), was injured in a motorcycle accident on Interstate 77 South in downtown Cleveland, Ohio. Plaintiff by and through his legally appointed guardian, Donna Golembiewski, filed a complaint alleging that defendant, Ohio Department of Transportation ("ODOT"), was negligent·and that its negligence was the proximate cause of the

motorcycle accident that resulted in injuries to Golembiewski. ODOT denied liability.

The court bifurcated the issue of liability from damages and held a trial upon the sole issue of liability. At the completion of the evidence presented at trial, the court directed the parties to file post-trial briefs with proposed findings of fact and conclusions of law. After carefully considering all the exhibits and reading all the depositions admitted into evidence, the court hereby renders the following decision.

The court finds that the facts and issues hereinafter set forth in this decision were established by a preponderance of the evidence and are determinative of plaintiffs' claim against defendant, ODOT.

At approximately 11:30 p.m. on August 24, 1994, Golembiewski left the Shark's Club, located in an area called "The Flats" in downtown Cleveland, Ohio, on his 1990 Harley Davidson motorcycle. Golembiewski was accompanied by his friend, James Messina, who was also riding a Harley Davidson motorcycle. The pair had just attended a weekly gathering at the Shark's Club called "Harley Davidson Night." While patronizing the neighboring establishments in "The Flats," Golembiewski consumed several beers on an empty stomach over approximately a one-to-one-and-one-half-hour period. As Golembiewski and James Messina entered the Ontario Street ramp to I–77 South, riding side by side, they came upon a vehicle driven by Rod Keeley, which they simultaneously passed on each side. The Ontario Street entrance ramp to I–77 South is a single lane with an uphill grade. At the top of the ramp at the "point of the gore" the ramp merges with I–77 South. The "gore" is a white painted solid line that separates the Ontario Street ramp lane from the middle lane of I–77 South. It also creates an "acceleration lane" for drivers to make the transition from the ramp to I–77 South and continues on until the next exit as a drop lane. Upon passing the gore, a driver has a view of I–77 South, consisting of three lanes.

As the motorcyclists approached the top of the entrance ramp, Golembiewski and Messina began to execute a two-lane change across the solid white lines into the far left lane. Prior to reaching the far left lane, Golembiewski's motorcycle struck a traffic cone which had been placed by an ODOT sweeping crew earlier in the evening of August 24, 1994. Golembiewski thereupon lost control of his motorcycle and skidded into the concrete jersey structure separating northbound and southbound I–77 on the east side of the expansion bridge.

The speed limit in the area of the accident was posted as fifty m.p.h. and the evidence indicates that Golembiewski was traveling at a speed of fifty to fifty-five m.p.h. when he struck the cone. The road surface was dry and there were no adverse weather conditions.

On the night of the accident, an ODOT maintenance crew was undertaking a berm cleaning on I–77 South which began at 8:00 p.m. The project required that the far left lane of I–77 South be closed. Warning signs were placed on I–77 South and the crew first set up a taper. A taper at night is accomplished by placing reflectorized cones on the roadway spaced five to seven feet apart to gradually close the lane of travel. After the taper, the cones are spaced farther apart.

The ODOT crew placed one warning sign on the Ontario Street ramp advising that road work was ahead. However, witnesses testified they did not see any warning signs on the ramp. After the taper, and beyond the tip of the gore, the crew began to alternate reflectorized and nonreflectorized cones on the line separating the middle and far left lanes.

Testimony also indicated that there was a nonreflectorized cone that had been knocked into the left berm. This cone was visibly "marked up" and it appeared to have been hit by Golembiewski. The lighting in the area was poor, and there was testimony that the cones were difficult to see.

The crux of plaintiffs' complaint is that defendant was negligent because the temporary lane closure of I–77 was accomplished in a negligent manner and that it failed to provide a reasonably safe condition on I–77 at or near the Ontario Street entrance ramp. Conversely, defendant denies that it was negligent and alleges that it was the negligence of Golembiewski that was the proximate cause of the accident.

In order for plaintiffs to prevail upon their claim of negligence, they must prove by a preponderance of the evidence that defendant owed them a duty, that it breached that duty, and that the breach proximately caused their injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469–470.

■ ODOT has a duty to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Ohio Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486.

■ ODOT's duty in placing signs and traffic cones is established by the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways ("Manual"). *Dunn v. Ohio Dept. of Transp.* (Jan. 18, 1992), Ct. of Claims No. 90–07280, unreported. A breach of that duty is negligence *per se* and results when ODOT fails to conform with the requirements set forth in the Manual. *Kocur v. Ohio Dept. of Transp.* (1993), 63 Ohio Misc.2d 342, 629 N.E.2d 1110.

The type of cones used for nighttime lane closures is dictated by Section 7F–5 and 7F–6 of the Manual, which states in pertinent part: "[F]or nighttime use

they *shall* be reflectorized or equipped with lighting devices for maximum visibility." (Emphasis added.)

The Manual utilizes a trilevel method based on the use of the words "shall," "should," and "may" as defined in Section 1d of the Manual. Section 1d defines the word "shall" as follows: "1. *Shall—a mandatory* condition. Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is *mandatory* when an installation is made that these requirements be met." (Emphasis added.)

Therefore, the use of the word "shall" indicates a mandatory requirement, whereas the use of the word "should" is merely advisory but not mandatory, and "may" indicates a permissive condition. *Kocur, supra.*

■ The court finds that ODOT did not utilize all reflectorized cones in its placement of the setup on I–77 South and thus failed to follow the mandatory requirements of the Manual. ODOT breached its duty to Golembiewski and its failure proximately resulted in injury to Golembiewski.

Plaintiffs also claim that defendant was negligent because it did not place adequate warning signs on the Ontario Street entrance ramp as required by the Manual, and that such negligence was also a proximate cause of Golembiewski's injuries.

Section 7J–3 of the Manual deals with the placement of warning signs and states that:

"It is also desirable to place additional advance warning on adjacent facilities whenever entrances to the limited-access facility are past the usual warning signs.

"A complete series of warning signs is generally required on both sides of the roadway for lane closures or other restrictions to traffic flow which may be encountered. The sign layout should provide the driver with specific information on the lane closed; for example, type of activity or event, speed controls, and special directions for passing around or through the work site. The reasonableness of all restrictions must be carefully evaluated to obtain maximum driver observance."

Testimony indicates that one "road work ahead" sign was placed on the left side of the Ontario Street ramp.

■ The court finds that the Ontario Street ramp is a "roadway" as referred to in Section 7J–3 of the Manual. Thus, more than a general warning sign was required on the ramp. ODOT had a duty to place warning sings on both sides of the ramp, and the sign was required to inform motorists with more information, specifically, advance notice of a lane closure. A general "road work ahead" sign

therefore violates this section of the Manual as does the placement of merely one sign.

The court finds that none of the passing motorists who testified recalled seeing a warning on the ramp. ODOT was negligent in not providing Golembiewski adequate warning of the upcoming lane closure.

The court finds that the proximate cause of Golembiewski's injuries was the negligent failure of ODOT to utilize all reflective cones in the high speed lane closure of I–77 South and to post adequate warning signs on the Ontario Street ramp.

Based upon the above finding of negligence, the court need not address the remaining individual allegations contained in plaintiffs' argument.

The court must now address the allegations of negligence on the part of Golembiewski.

The totality of the evidence and review of the law convince this court that Golembiewski also was negligent and his negligence was a proximate cause of his injuries. All drivers have a duty to look and see if a lane change can be made with reasonable safety.

R.C. 4511.39 states in relevant part:

"No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided."

█ Although cutting across the solid white lines is not illegal, the court finds that Golembiewski's premature movement across the gore in an attempt to reach the high speed lane was not exercised with due care. The solid white line is intended to discourage motorists from changing lanes. Had Golembiewski exercised reasonable safety in entering I–77 South and making his lane changes, he would have had more time to observe his surroundings and make proper adjustments. Golembiewski had the option of staying in his lane of travel until he passed the gore and would have had a better view of the mainline of I–77 South, resulting in a longer reaction time to ODOT's setup.

█ In addition, the court finds that Golembiewski's blood alcohol level affected his ability to control the motorcycle and contributed to the collision.

Testimony proved that Golembiewski was driving under the influence of alcohol. Evidence also proved that intoxication by alcohol impairs a person's perception, attention and reaction time. The court finds that Golembiewski was intoxicated to a degree that rendered him negligent in the operation of his motorcycle.

The court, as the finder of fact, has the discretion to determine the degree of negligence of the respective parties for the purpose of Ohio's comparative negligence statute, R.C. 2315.19. *Berz v. Ohio Dept. of Hwy. Safety, Div. of Hwy. Patrol* (1992), 66 Ohio Misc.2d 66, 643 N.E.2d 181.

Based on the totality of the evidence, the court finds that plaintiffs have proven that defendant breached its duty to Mr. Golembiewski. The court finds that defendant was sixty-five percent negligent and that its negligence was a proximate cause of the injuries.

In addition, the court finds that Golembiewski was thirty-five percent negligent and that his negligence also was a proximate cause of the collision.

Accordingly, this matter will be scheduled for trial on the issue of damages consistent with this opinion.

*So ordered.*

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.

## JOURNAL ENTRY APPROVING SETTLEMENT

### Filed Sept. 15, 1997

The court, being fully advised as to the premises, approves and confirms the settlement agreement heretofore entered into by and between the parties hereto and orders the cause be dismissed with prejudice to all parties, all court costs to be paid by the defendant. No interest shall be paid on the amount of the settlement.

It is further ordered that the settlement warrant of $1,550,000 is to be drawn on the account of the Ohio Department of Transportation and be sent to the plaintiff, Marcus A. Golembiewski c/o Donald E. Caravona, Esquire, Donald E. Caravona & Associates, The Terminal Tower, Suite 1900, Cleveland, OH 44113.

It is further ordered that a settlement warrant of $2,000,000 be drawn on the account of the Ohio Department of Transportation to be issued to Providian Assignment Corporation, c/o National City Bank, ATTN: Lock Box Department, 5th Floor, Section # 985, 101 South Fifth Street, Louisville, KY 40202.

It is further ordered that a settlement warrant of $1,550,000 be drawn on the account of the Ohio Department of Transportation to be issued to G.E. Capital Assignment Corporation, at Chase Manhattan, NA c/o G.E. Capital Structured Settlements, ATTN: Executive Manager, 55 Water Street, Room 826–8th Floor, New York, N.Y. 10041.

It is further ordered that a settlement warrant of $1,000,000 be drawn on the account of the Ohio Department of Transportation to be issued to BHG Structured Settlements, Inc. At 3024 Harney Street, Omaha, Nebraska 68131–3580, ATTN: Dale Geistkemper.