OPINION
Plaintiffs-appellants, Cathy A. Takacs ("appellant") and her husband Gerald Takacs, appeal from the March 1, 1999 decision and judgment of the Ohio Court of Claims, rendering judgment in favor of defendant-appellee the Ohio Department of Transportation ("ODOT") in a negligence action. For the reasons that follow, we affirm.
On August 18, 1997, appellants filed a complaint in the Ohio Court of Claims alleging that ODOT's negligent construction and maintenance of a bike path on State Route 283 was the proximate cause of appellant's injuries when the front wheel of appellant's bicycle hit a series of potholes on the bike path causing her to fall off of her bicycle and into the path of an oncoming car. The Court of Claims bifurcated the issues of liability and damages, and the matter came to trial on November 2, 1998 on the issue of liability. Appellant testified that, on Sunday morning August 20, 1995, she left her house to take a bicycle ride on a bike path that she had heard was newly opened. Appellant was an experienced bike rider, having ridden approximately sixty miles a week over the past ten years. That morning, appellant proceeded east on the striped bike path on State Route 283. As she advanced up a "little incline" to a bridge, the front wheel of her bike hit a series of potholes causing her to lose control of her bicycle and fall into the path of oncoming traffic. A passing car then ran over appellant's left arm.
Appellant's husband testified, and the trial court admitted into evidence, a series of photographs of the area taken by appellant's husband approximately one week after the accident. Appellants then rested.
In its case, ODOT submitted the deposition transcript of Santina Milczewski, project administrator over the construction project to widen State Route 283 and install an adjacent bike path on the south side of Lakeshore Blvd. in Lake County, Ohio. Milczewski testified that the accident took place during the period of construction. She further testified that there would have been construction signs at the beginning and end of the project and randomly placed within the project itself. Milczewski also testified that, while her employer was in control of the project, the bike path was not open to the public. Milczewski also testified that the bridge approach appeared to be covered with a base grade of asphalt that is more porous than a final layer. The trial court rendered judgment in favor of ODOT on March 1, 1999, and it is from that judgment that appellant appeals, assigning as error the following:
ASSIGNMENT OF ERROR NO. 1
 The Court of Claims erred in finding that the bridge approach did not render the path unreasonably dangerous for usual and ordinary traffic.
ASSIGNMENT OF ERROR NO. 2
 The Court erred in finding that Takacs' comparative negligence was the greater cause of her injuries than any acts of defendant.
ODOT asserted a cross-assignment of error in its brief as follows:
 The trial court erred by overruling appellee's motion for an involuntary dismissal pursuant to Civil Rule 41(B)(2) as appellants presented no evidence during their case-in-chief as to the party who was responsible for maintaining the bike path.
Appellant's first assignment of error is, in essence, a claim that the judgment of the trial court was against the manifest weight of the evidence.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus. The trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony; therefore, an appellate court must afford deference to the findings of the trial court.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In order to prevail upon her claim of negligence, appellant was required to prove by a preponderance of the evidence that ODOT owed her a duty of care, that it breached that duty, and that the breach proximately caused her injuries. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 285. Although the state is not an insurer of the safety of its highways, the state has a duty to maintain its highways in a reasonably safe condition. Knickelv. Dept. of Transportation (1976), 49 Ohio App.2d 335, 338.
Appellant argues that the trial court's finding that construction signs were posted and that the bike path was not open to the public is not supported by the record. Takacs testified that she did not notice any construction signs along the route she took to get to the bike path and that she had heard somewhere that a new bike path was open. However, the record does contain the testimony of the project administrator that, while the project was going on, it was not open to the public, and signs were posted. Despite Milczewski's inability to state with particularity where the signs were posted along the route, a finding that there were signs is supported by the record and hence not against the manifest weight of the evidence.
Appellant next takes issue with the trial court's finding that that the portion of the path where appellant lost control of her bike was unlined whereas the rest of the path was clearly marked. Appellant argues this was a small area, and that the trial court must have assumed the bike path ends just before the bridge begins just after the bridge. We disagree.
First, the trial court did not say that the bike path ended where it was unlined and resumed across the bridge. Second, the trial court found, and the photographs submitted by appellant clearly show, that the path leading up to the bridge was smooth and striped until just before the bridge where the striping ended and the pavement became rougher. The trial court considered this fact in connection with its discussion of whether appellant exercised concern for her own safety which an ordinarily prudent person would use under similar circumstances. It is reasonable to infer that an area of the path that is unlined might caution an ordinarily prudent person riding a bike path.
Appellant also argues that the bike path's surface was smooth right up to the area in which she fell. At that point, appellant argues that the surface was unusually rough, and the potholes were not clearly visible until appellant was upon them due to the incline as she approached the bridge.
A review of the photographs submitted by appellant shows potholes partially filled with dirt situated on both sides of the bike path with a rough grade of asphalt along the middle of the path. Appellant argues the path is narrow and does not permit any room to maneuver. However, it appears from the photographs that the middle of the path is rough but does not contain potholes. Appellant disagrees with the trial court's characterization of the area where appellant lost control as a "shallow depression." However, appellant did not measure the area and was unable to testify how many or how deep or how long the areas were. It also appears from the photographs that the incline is such that there were no obstructions that prevented appellant from seeing the potholes. Thus, the trial court's finding that the roughness of the path did not render the path unreasonably dangerous for usual and ordinary traffic is supported by the evidence, particularly the photographs in the record. The first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant argues the record does not support the trial court's finding that appellant's failure to observe and avoid any hazards created by potholes or debris was the sole and proximate cause of the accident. Appellant testified that the incline, as she approached the bridge, limited her visibility of the pavement making it impossible for her to see the potholes until she was upon them.
Assuming, arguendo, that ODOT was negligent, the trial court applied the appropriate legal standard and analyzed the comparative negligence of appellant. The issue of whether Takacs breached a duty to look and avoid a hazard and whether her contributory negligence is the proximate cause of the injury must be analyzed by the comparative negligence provisions of R.C.2315.19(A)(1). Texler v. D.O. Summers Cleaners Shirt LaundryCo. (1998), 81 Ohio St.3d 677, 681.
In Texler, the Ohio Supreme Court cited, with approval, Grossnickle v. Village of Germantown (1965), 3 Ohio St.2d 96, paragraph two of the syllabus, in which the court stated that "a pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward."
As discussed above, appellant had a duty to use reasonable care to avoid any hazards created by potholes or debris. The photographs show the areas where appellant lost control was conspicuously unlined whereas the rest of the path was clearly striped. Moreover, the photographs depict a very gradual incline leading to the bridge and no obstructions that prevented appellant from seeing the rough area as she approached the bridge. Appellant herself testified, "I mean, it wasn't a huge hill, but it was like a little incline." (Tr. 49.)
Based on the record before us, the trial court's finding that appellant's negligence exceeded any negligence of ODOT is not against the manifest weight of the evidence. The second assignment of error is not well-taken and is overruled.
Based on the foregoing, ODOT's cross-assignment of error is moot. Accordingly, the two assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
KENNEDY and TYACK, JJ., concur.